Thomson, P. J.
It is conceded that the ordinance in question was consistent with the provisions of the charter in force at the time of its adoption; and, by the terms of see *348 tion 1 of article IX, of the act of April 3, 1893, if it was not inconsistent with the provisons of that act, it remained a valid ordinance.
For the plaintiff, it is contended that the ordinance, at least in so far as the validity of the plaintiff’s appointment and the fixing of his salary are concerned, was not overthrown by the amended charter ; while in behalf of the city it is argued, that the effect of that law was to abrogate it in all its parts. We shall therefore compare each of the provisions of the ordinance with the corresponding provision of the amended charter, to see how far the two may stand together.
The ordinance created a new executive department, called “The Department for the Inspection of Buildings, ’ ’ and placed it on the same footing with the other executive departments of the city government. But the charter of 1893, itself, established and defined the city’s executive departments. It fixed the number, and assigned to each its place in the city government. The inspection of buildings was committed to the department of public health and safety, and placed specially in charge of one of its bureaus, named the bureau of inspection, the head of which was an officer called the commissioner of inspection, upon whom was cast a multiplicity of duties aside from the inspection of buildings. When the department of public health and safety was established, and divided into bureaus to one of which was assigned the inspection of buildings, the department created by the ordinance ceased to exist. It was displaced by a department of much more extensive scope, but which included all the powers and duties pertaining to it. The- ordinance, therefore, in so far as it created a department, was abrogated by the charter.
The ordinance provided for a chief officer, or *349 head, of the department it created, to be appointed by the mayor and confirmed by the board of supervisors, and to be called the “Inspector of Buildings,” but when the department fell, the office of chief or head of the department fell with it. The charter left no room for any such office or any such officer. The head of the department which embraced the bureau of inspection, was the mayor himself; and the head of the bureau of inspection was the commissioner of inspection.
It cannot be said that the department of inspection created by the ordinance, survived in the charter as the bureau of inspection; or that, in harmony with the charter, the head of the department of inspection might become the head of the bureau of inspection; because the department of inspection was created with reference to but one subject, and the authority of its chief officer extended to but one subject; whereas the functions of the bureau of inspection included a number and variety of subjects in addition to the inspection of buildings, which were placed under the control of its head, and in respect to which, the chief of the department of inspection could, in virtue of his appointment under the ordinance, exercise no control. But it is said that so far as the provision for the appointment of an inspector of buildings is concerned, the ordinance may still be harmonized with the charter, because the charter confers upon the city council the power to provide for the- inspection and regulation of buildings, and the inspector appointed under the ordinance might, in virtue of his appointment, and the nature of the duties committed to him, consistently with the provisions of the charter, continue the exercise of his functions as assistant to the commissioner of inspection. Let us examine this proposition. Subdivision 4 of section 20 of article II does, in terms, empower *350 the city council to provide for the inspection and regulation of buildings; but in view of the fact that the charter places the inspection of buildings under the exclusive control of the commissioner of inspection, it was certainly not the intention of the legislature to bring the charter into conflict with itself by authorizing the council to provide for the appointment of some other officer to exercise the same control. That provision would be satisfied by an ordinance prescribing the manner of inspection, the circumstances under which it should be made, and the duties of the inspector and the owner in relation to it. But we find in the charter another, and insurmountable, objection to the proposition. Section 79 of article III provides for the employment by the commissioner. of inspection of his own assistants, subject only to the condition that they be- authorized by the mayor. Counsel, however, say that the authority of the mayor to make the appointment in question, is found elsewhere in the charter, so that au inspector of buildings was not intended to be included among the assistants whom the commissioner might employ. Section 1 of article III vests the executive power of the city in a number of officers to be elected by the people; and in a health commissioner, a commissioner of inspection, a park commissioner, a superintendent of supplies, and such other boards and officers as may be provided for by ordinance, not inconsistent- with the provisions of the act, to be appointed by the mayor. 'It is upon the last clause that counsel relies. But by the rule ejusdem.generis, where there is an enumeration of particular things followed by general words, the latter shall be construed as having reference only to things of the same kind or class with those specifically mentioned. — St. Louis v. Laughlin, 49 Mo. 559; Morse v. Morrison, *351 16 Colo. App. 449; Bouvier’s Law Dictionary, Tit. Ejusdem Generis.
The other boards and officers to be provided for by ordinance, whose appointment was given to 'the mayor, must therefore be boards or officers belonging to the same general class, rank or grade, with those enumerated. The multifarious duties of the commissioner of inspection would, doubtless, necessitate the employment of a number of assistants; but a mere assistant of an officer to whom certain of the details of the office are intrusted, if he may properly be called an officer at all, is not an officer of the same class, grade or rank with the officer under whom he serves; and, hence, the words ‘ ‘ other officers, ’ ’ would not include him.
Section 3 of article III makes the city attorney the head of the- department of law; the board of public works, of the department of public works; the mayor, of the department of public health and safety; the park commission, of the department of parks; and a superintendent of supplies, of the department of supplies; and then provides that all subordinate officers and employees, except of the board and commission, shall be appointed in writing by the heads of their respective departments; and that subordinate officers and employees of each board or commission, shall be appointed by a resolution of the board or commission. A construction of these provisions which woiild cast on the heads of the departments plenary power as to the appointment of subordinate officers and employees of every degree in all the departments, would furnish an argument that, as the mayor is the head of the department of public health and safety, the appointment by him of the plaintiff as inspector of buildings, was proper, and that, thus far at least, the ordinance was in harmony with the charter; and this is the view which is urged *352 upon us in behalf of the plaintiff. But such a construction would array different provisions of the charter against each other; because, as to the department of public health and safety, in several instances, the power of appointment of subordinates is specially lodged, not in the mayor, but in the officers and boards constituting it. Thus, by the terms of sections 45, 60, 64 and 65, of article III, the fire and police board, composed of the fire commissioner, police commissioner, and excise commissioner, is empowered to appoint a secretary of the board, a chief, assistant chiefs, and wardens of the fire department, chiefs of police and detectives, and such other officers and assistants as it may deem proper. The general authority of appointment conferred upon the mayor, as head of this department, must therefore be held inapplicable to cases which come within special provisions lodging the power of appointment elsewhere; and one of those provisions is that authorizing the commissioner of inspection, with the approval of the mayor, to appoint his own assistants.
Neither is the ordinance aided by section 23 of article II, authorizing the city council to provide for the employment of such clerks and other persons in any of the departments of the city government as the exigencies of the public service may demand. That section can be applicable only to cases concerning which there is an absence of provision in the charter. But as we have seen,"the charter itself provides the manner in which the assistants of the commissioner of inspection shall be employed.
The result of our comparison of the ordinance with the charter is that the former contained no provision which is not inconsistent with some provision of the latter, and that upon the taking effect of the charter, the whole ordinance became void.
But the appointment in question does not seem *353 to have been made upon the authority of the ordinance. It was not the appointment for which the ordinance provided. The ordinance fixed the term of office of the appointee at two years; but the plaintiff was appointed to hold his office during the pleasure of the appointing power. By the terms of the ordinance the appointment could not take effect until it was confirmed by .the board of supervisors; but this' appointment was not submitted to the board of supervisors. In making the appointment the mayor probably supposed he was acting by authority of the charter, and independently of the ordinance; but under the charter such an appointment by him was a nullity. The plaintiff, however, acted for five years as assistant to the commissioner of inspection; and, having accepted his services, how far the city might be estopped to question the validity or regularity of his emplojment under the charter, it is unnecessary to inquire, because he was paid for his services. He claims a balance over what he received, on the theory that he was entitled to the salary provided by the ordinance; but that salary was inseparably attached to the office created by the ordinance; and when the office was abolished by the charter, there was no officer entitled to receive it. The salary, being payable only to the incumbent of the office, became extinct with the office. Except in the annual appropriation bills, no salary was provided for the plaintiff as assistant to the commissioner of inspection; and, beyond the sums appropriated for his benefit, he had! no claim to compensation. But those sums were paid} to him in full; and, in so far as he ever had a legal; demand against the city, that demand was satisfied, j
The judgment will be affirmed.

Affirmed.